United States District Court
Southern District of Texas
**ENTERED**
March 07, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENESIA M. ISIAKA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-2445 |
| | § | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,[1] | § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[2] in this social security appeal are the parties' cross Motions for Summary Judgment (Document Nos. 24, 27-28). Having considered the motions, each sides' briefing and response (Document Nos. 27-28, 30), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 24) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 27) is DENIED, and this proceeding is REMANDED to the Commissioner for further proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Carolyn W. Colvin as the defendant in this case.

[2] On June 29, 2016, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 16.

1

**I.     Introduction**

Plaintiff Denesia M. Isiaka ("Isiaka") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Insurance benefits ("SSI"). In this appeal Isiaka contends that: (1) the Administrative Law Judge's "RFC finding is inconsistent with the ALJ's assessment of the medical mental source opinions in the record;" and (2) the Administrative Law Judge's "finding that [she] retains the ability to perform other work existing in significant numbers in the national economy is not supported by substantial evidence." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's RFC's determination and his disability determination at step five, and that the decision comports with applicable law.

**II.    Administrative Proceedings**

On or about June 14, 2012, Isiaka applied for DIB and SSI, claiming that she has been unable to work since May 27, 2012, as a result chronic asthma, crohn's disease, left side blood clot, and left side abnormal ankle size (Tr. 219-234, 243). The Social Security Administration denied the applications at the initial and reconsideration stages. After that, Isiaka requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Richard A. Gilbert, held a hearing on December 5, 2013, at which Isiaka's claims were considered *de novo*. (Tr. 40-87). On January 30, 2014, the ALJ issued his decision finding Isiaka not disabled. (Tr. 23-33).

Isiaka sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On June 18, 2015, the Appeals Council found no basis for review (Tr. 1-4), and the ALJ's decision thus became final.

Isiaka filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III.   Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236

(5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.    Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the

burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Isiaka had not engaged in substantial gainful activity since May 27, 2012, her alleged onset date. At step two, the ALJ found that Isiaka had the following severe impairments: dysthymic disorder, history of asthma, history of ulcerative colitis, history of deep vein thrombosis, major depressive disorder, obesity, osteoarthritis of the knee, degenerative disc disease of the cervical spine, and tendinitis of the shoulder. At step three, the ALJ concluded that Isiaka did not have an impairment or combination of impairments that met or medically equaled a listed impairment, including Listings 1.02, 1.04, 3.02, 4.11, 4.12, 5.08 and 12.04. The ALJ then, prior to consideration of steps four and five, determined that Isiaka had the residual functional capacity ("RFC") to perform a restricted range of sedentary work "in that she can lift and carry ten pounds occasionally, five pounds frequently. She can stand and walk two hours in an eight-hour workday and sit for six hours in an eight-hour workday. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, yet must never climb ladders[,] ropes or scaffolds. Further, she is limited to occasional overhead reaching bilaterally, and work environments in which the bathroom is readily accessible. She must avoid concentrated exposure to dusts, fumes, gases, and poor ventilation. Furthermore, she can understand, remember, and carry [ ] out detailed, but not complex instructions; make decisions; attend and concentrate for extended periods; accept instructions; and respond appropriately to changes in routine work settings." At step four, using that

RFC, and based on the testimony of a vocational expert, the ALJ determined that Isiaka could not perform her past work as a teacher's aide, screener, or health care provider. At step five, again using that RFC, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the regional and national economy that Isiaka could perform, including order clerk, jewelry preparer, and optical goods worker, and that she was therefore not disabled.

In this appeal, Isiaka raises two claims that relate solely to her mental impairment. First, she maintains that the ALJ erred in determining her mental RFC, and his RFC determination is, as a result, not supported by substantial evidence, because there is no medical or opinion evidence that she can "understand, remember and carry out *detailed, but not complex* instructions." According to Isiaka, the expert opinion evidence in the record only supports a conclusion that she can understand, remember and carry out *simple* instructions. Isiaka then argues, in somewhat of a segue of her first claim, that the ALJ's step five determination is not supported by substantial evidence because each of the jobs identified by the ALJ require reasoning abilities that exceed her ability to understand, remember and carry out simple instructions.

V.     **Discussion**

The medical evidence in the record that relates to Isiaka's physical impairments is extensive. That related to her mental impairments – her dysthymic disorder and her depression – is much more limited. But, as it is the expert opinion evidence related to Isiaka's mental impairment(s) that forms the basis of Isiaka's claims in the appeal, that is where the Court will focus.[3]

---

[3] The Commissioner, in her briefing, correctly points out that Isiaka's focus in both her applications and at the hearing was on her physical impairments, but that her focus in this appeal is on her mental impairments.

7

In determining that Isiaka, notwithstanding her dysthymic disorder and depression, could engage in work related activities that required the ability to understand, remember and carry out detailed, but not complex instructions, the ALJ wrote:

> . . . turning to the claimant's allegations of mental instability, the undersigned notes minimal to no significant lasting limitations incurred from mental limitations. In fact, while more recent record did reveal some degree of limitations due to depression incurred from familial and financial stressors, providers till find her [ ] no more than moderately limited, as she possessed good insight, good judgment, and good impulse control (Ex. 26F/396).  This view of the claimant, the undersigned notes, echoed that of her provider's earlier findings, as they found her with no mental  limitations upon their examination (Ex. 21F/56).  Interestingly, while a consultative examiner found the claimant with severe limitations mentally due to her subjective  reports, her providers found her with few if any limitations (Ex. 15F).  In fact, Dr. Turner, State Agency Reviewer[,] noted the inconsistencies between the claimant's presentation and her allegations as, only a couple of days before her psychological evaluation, she reported to her physical evaluator that she had no difficulty performing light household chores, watching TV, shopping, or cooking (Ex. 5A/8, 14F/2, 15F/2).
>
> * * *
>
> . . . turning to the claimant's mental allegations, the undersigned assigns significant weight to Dr. Oguejiofor's and State Agency providers['] findings that mentally the claimant remains capable of understanding, remembering, and carrying out simple instructions; making simple decisions; interacting adequately with co-workers and supervisors; and responding appropriately to changes in a routine setting (Ex. 1A, 2A, 5A, 6A).  In granting this weight to these reviewers[,] the undersigned finds that the claimant's remarkably different presentations to providers in the same month, and her subjective reports of mental limitations made the claimant a less than credible reporter of her limitations.

(Tr. 29, 30).  Isiaka argues that the significant weight the ALJ gave to the expert medical opinions that she can understand. remember and carry out *simple* instructions and make *simple* decisions is inconsistent with the ALJ's mental RFC determination that she can understand, remember and carry out *detailed* instructions.

8

Isiaka is correct that the ALJ's reliance on the expert medical opinions is not entirely consistent with his mental RFC assessment. Isiaka, however, is not entirely correct that none of the expert medical opinion evidence supports the ALJ's determination that she can understand, remember and carry out detailed, as opposed to simple, instructions. Isiaka underwent a consultative mental evaluation on September 27, 2012, with Dr. Manjeshwar R. Prabhu, who assessed her global assessment of functioning ("GAF") at 35.[4]  Isiaka reported to Dr. Prabhu,

> feeling hopeless, helpless, in the dumps. and having frequent tearful episodes. She sometimes feels life is not with living, but has never harmed self. She does think of suicide, but has no plans for self harm, and has had those thoughts in the past. She has mood swings, racing thoughts, irritability, and anxiety. She has panic attacks once a day that are triggered by pain, or social interaction. She prays, watches TV, and tries to limit social interaction to decrease attacks. She has difficulty falling an staying asleep, daytime drowsiness, and low energy. In the past, she heard the voice of a stranger talking to her, but not commanding her to do anything, however, she did respond verbally to the voice. She last heard the voice about a month ago. She denied delusions. Her appetite has been increased, and she has gained about 2lbs per week in the last month. Mr. Isiaka has been depressed since junior high school, but got worse in June of 2012. She was not working at the outset of her illness. She has never been in a psychiatric hospital, and is not seeing a psychiatrist. Her illness began to affect her ability to work in May of 2012, and she stopped working on May 31, 2012. She has made no attempt to return to work. Her medical doctor prescribes Citalopram 20mg 1 daily for her emotional illness, and it is not helpful, and causes her to feel tired, sleepy,

---

[4] The Global Assessment of Functioning ("GAF") is a measurement "with respect only to psychological, social and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition (DSM-IV), at 32). A GAF of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition, Text Revision (DSM-IV-TR), at 34. A GAF of 41-50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* A GAF of 31-40 denotes "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

numb, and more depressed. She has never used alcohol, tobacco, or street drugs. (Tr. 656). Upon mental status examination, Dr. Prabhu noted that Isiaka's "thought process is marked by much blocking," her "psychomotor activity is decreased. Her affect is sad, and mood dysthymic," she was "well oriented to time, place, and person. . . She could remember events well. Recent memory is fair. . . . Immediate memory is decreased. . . Her concentration is fair. . . Abstracting ability is good," "[h]er judgment is fair," and her "[f]und of knowledge is fair." (Tr. 657). Dr. Prabhu diagnosed Isiaka with major depressive disorder and opined that her "prognosis is fair, if she receives treatment." (Tr. 658). Nothing in Dr. Prabhu's report supports the ALJ's determination that Isiaka can understand, remember and carry out detailed, but not complex instructions.

As for the agency physicians who reviewed Isiaka's medical records and opined about her mental impairments and limitations, while Dr. Meyer concluded in October 2012 that Isiaka could understand, remember and carry out detailed, but not complex instructions (Tr. 99, 111), Dr. Turner in January 2013 concluded that Isiaka was markedly limited in her ability to understand, remember and carry out detailed instructions, but did have "the capacity to understand. remember, and carry out simple instructions [and] make simple decisions (Tr. 126- 127; 143-2-143). The ALJ, in his decision, stated that he was giving significant weight to the "State Agency providers findings that mentally the claimant remains capable of understanding, remembering, and carrying out simple instructions; making simple decisions; interacting adequately with co-workers and supervisors; and responding appropriately to changes in a routine setting" (Tr. 30), but he did not mention, or distinguish between the opinions of Dr. Meyer and Dr. Turner, which were not the same with respect to Isiaka's ability to understand, remember and carry out instructions. And,

as for the ALJ's stated reliance on the opinion of the psychiatric expert who testified at the hearing (incorrectly identified in the ALJ's decision as Dr. Oguejiofor), the record shows that he did not render any opinion on Isiaka's ability to understand, remember and carry out instructions. All Dr. Stuart testified and opined about at the hearing was whether Isiaka's mental impairments met or equaled Listing 12.04 for affective disorders.

In all, while there is some evidence in the record to support that part of the ALJ's mental RFC, determining that Isiaka could understand. remember and carry out detailed, but not complex instructions, *see* opinion of Dr. Meyer at Tr. 99, 111, the ALJ mis-stated the evidence as having been provided by the "State Agency *providers*," and failed to explain how Dr. Meyer's opinion that Isiaka could understand, remember and carry out detailed, but not complex instructions was to be credited over the opinion of Dr. Turner that Isiaka was markedly limited in her ability to understand, remember and carry out detailed instructions. Simply put, the ALJ's decision as it relates to Isiaka's mental RFC does not lend itself to the type of review required under § 405g because it both mis-states the record evidence, and fails to distinguish between the inconsistent expert medical opinions in the record as to Isiaka's ability to understand. remember, and carry out instructions. Remand is therefore warranted for further evaluation of the evidence related to Isiaka's mental impairments and her limitations related thereto.

## VI.    Conclusion and Order

Based on the foregoing and the conclusion that there are errors in the ALJ's RFC determination vis-a-vis Isiaka's mental impairment, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 24) is

GRANTED, Defendant's Motion for Summary Judgment (Document No. 27) is DENIED, and this matter is REMANDED to the Commissioner pursuant to sentence four, 42 U.S.C. 405g, for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 6th day of March, 2017.

Frances H. Stacy
United States Magistrate Judge